The opinion of the Court was delivered by
Dunicin, Ch.
The Act of 1824 declares that no sale of personal property thereafter made by an executor or administrator, without an order from the Court of Ordinary, or Court of Equity, shall be valid in law or equity, except it be directed by the will.
This sale was made by the executor in the spring of 1834, and must depend for its validity on the power granted by the will. In England, it is very well settled that such power given by the will to the executor to sell real estate, must be strictly construed ; and that when a time is fixed for the sale, the executor is not permitted to anticipate the time; “ a power of sale, like all other powers, can be exercised only in the mode, and subject to the conditions, if any, prescribed by the instrument creating the power. Therefore, where the trust is to sell after the death of the tenant for life, a sale in his life time will be bad.” Hill on Trustees, 478, citing Sir James Wigram V. C. in Blacklow vs. Laws, 2 Hare. 40.
By the terms of this will, the negroes were bequeathed to testator’s wife “ during her natural life, and at her death to be sold and equally divided amongst his lawful heirs.” The power is not expressly given to the executors, to make the sale and division; but this as properly results from their appointment. But the period fixed by the testator for the sale and division was at the death of his widow. If the exigencies of the estate required a departure from the provisions *386 of the will, it was the duty, as it was the right, of the executor to seek and obtain the sanction of the Court. In the absence of such authority, the sale in 1834 was a breach of trust on the part of the executor; and, upon the authority cited in the decree, the purchaser from him is affected with, notice of the trust.
As the widow was entitled to the possession of the negroes during her natural life, and she co-operated in the sale, the plaintiff’s right of enjoyment did not arise until the decease of the widow in 1855. This right was an equity to have the negroes then sold, and the proceeds distributed according to the provisions of the will. See Bush vs. Bush, 1 Strob. Eq. 377.
In dismissing the plaintiff’s bill, the Chancellor relied not merely upon the right of the executor either virtute officii, or under the express authority of the will, but also on the assent if not co-operation of the parties ultimately entitled, as inferred from the circumstances detailed in the decree; and he regarded this inference as strengthened by the fact that none of the heirs, except the plaintiff, Harriett Duke, had entered any complaint. The decree, however, remarked, following the statements of the bill, that Harriet D uke had become a widow, and that in her right, the claim was interposed. She was certainly a feme coverte at the time of the sale by the executor in 1834. In Terry vs. Brunson, 1 Rich. Eq. 98, it was held that though a vested right of the wife may be effectually assigned by her husband, her contingent interest will survive to her against his assignee, even though the assignment was made for a valuable consideration, and with her concurrence; and, in the recent case of Larey vs. Beazley, 9 Rich. Eq. 119, the Court ruled that, where a wife has an expectant interest, in chattels, whethersuch interest be vested or contingent, legal or equitable, no act of the husband or of any third person, in vesting the husband, a wife, or both, with the present or particular estate, will operate to vest the *387 future or expectant interest of the wife in her husband — other intermediate cases had fully recognized the general principle. And relying upon the statements of the bill, as repeated in the decree, that these proceedings were instituted in right of Harriet Duke, who had become discoverte since the sale in 1834, the Court was of opinion that her right was not precluded by the acquiescence, assent, or co-operation of her husband in that sale. But, upon an. inquiry suggested at the hearing, and upon examination of the evidence, and, since, upon the admissions of the plaintiff’s solicitor, it now appears that the statement of the bill, that the plaintiff, Harriet Duk.e, had become a widow, was made on misapprehension; and that, in fact, the plaintiffs, Abram Duke and wife, who prefer this bill, are the same persons who were married prior to the sale in 1834; at whose house the life tenant subsequently lived and died, and who (the Chancellor infers) sanctioned the sale made by the executor, with the co-operation of the tenant for life. This statement materially varies the rights of the parties. In the well considered cases of Alatheny vs. Guess, 2 Hill Ch. 67, and Reese vs. Holmes, 5 Rich. Eq. 564, the general principle is recognized and affirmed that neither the husband alone, nor the husband and wife jointly, have the power during the coverture, to assign the wife’s expectant interest, so as to defeat the right of the wife in remainder when it falls in, should the husband be then dead. But, while the inefficacy of a husband’s assignment made before he acquired the right to reduce, and who did not live to acquire that right, is thus affirmed, both cases recognize the distinction made by Lord Lyndhurst in Honner vs. Morton, 3 Russ. 65, that, should the husband survive until the right falls in, and then be capable of reducing the same into possession, “ his previous assignment will operate on his actual situation, and the property will be transferred.”
The defendant seeks no aid from this Court. No act is to be done by him. If Abram Duke had been himself the *388 expectant legatee, the circumstances detailed in the decree of the Circuit Court would be quite sufficient to warrant the decree which declines to grant him any assistance in assailing the title or disturbing the possession of the purchaser.
It is ordered and decreed that the appeal be dismissed.
Johnston and Wardlaw, CC., concurred.

Jippeal dismissed.